IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RAMONA JOLIVETTE,

                       Plaintiff,                OPINION AND ORDER

      v.

                                                07-cv-699-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Because Judge Shabaz will be convalescing from shoulder surgery for an extended period, I have assumed administration of the cases previously assigned to him, including this one, which is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Ramona Jolivette seeks reversal of the commissioner's decision that she is not disabled and therefore ineligible for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(i), 423(d) and 1382(c)(3)(A). Plaintiff contends that the decision of the administrative law judge who denied her claim is not supported by substantial evidence because the administrative law judge failed to fully develop the record after not obtaining a valid waiver of counsel from plaintiff, improperly

1

assessed her credibility, improperly discounted her treating physician's opinion and erred by failing to consider whether plaintiff's back condition met or equaled listing 1.04A. I find that, although the administrative law judge did not obtain a valid waiver of counsel from plaintiff, he fully developed the record. He properly assessed plaintiff's credibility, properly determined her residual functional capacity, properly gave little weight to her treating physician's opinion and properly determined that her back condition did not meet or equal a listed impairment.

For these reasons, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

The following facts are drawn from the administrative record (AR):

## FACTS

A. <u>Background and Procedural History</u>

Plaintiff was born on March 23, 1961. AR 69. She completed high school and has past relevant work experience as a bookkeeper. AR 80, 92, 97.

Plaintiff filed applications for disability insurance benefits and supplemental security income on March 31, 2005, alleging that she had been unable to work since April 14, 2004 because of chronic low back pain. AR 92.

After the local disability agency denied her application initially and upon reconsideration, plaintiff requested a hearing, which was held on June 27, 2007 before Administrative Law Judge Roger W. Thomas in Eau Claire, Wisconsin. The administrative law judge heard testimony from plaintiff, who was represented by a non-attorney representative. AR 363-93. He also heard testimony from a neutral vocational expert. AR 393-401. On July 26, 2007, the administrative law judge issued his decision, finding plaintiff not disabled. AR 10-17. This decision became the final decision of the commissioner on October 5, 2007, when the Appeals Council denied plaintiff's request for review. AR 3-5

### B. Medical Evidence

On April 7 and 14, 2004, plaintiff saw Dr. Janice Alexander at the Franciscan Skemp Clinic in Arcadia, Wisconsin. Plaintiff reported lower back pain radiating down her right leg. She obtained some pain relief after taking Flexeril and Vioxx. AR 275-80.

Plaintiff had a magnetic resonance imaging scan of her lumbar and thoracic spine on April 26, 2004. The thoracic scan was normal but the lumbar scan showed a small central disc protrusion at L4-5 resulting in mild central canal narrowing and mild disc bulge at L4-L5 with no significant nerve impingement. AR 214, 298-99.

On May 5, 2004, Alexander diagnosed plaintiff with L4-5-S1 disc syndrome. Alexander noted that plaintiff had unusual skin sensitivity along the L5-S1 distribution of both legs. AR 272.

On May 12, 2004, plaintiff saw Dr. Burton Onofrio, a neurosurgeon at the Mayo Clinic. Plaintiff reported having lower back pain for the past two and a half years following an accident that occurred while she was driving a manure spreader truck. She said the pain had begun recently to radiate into her left leg. In addition, she reported burning and numbness in her right thigh since March 2004. Plaintiff could walk on her heels, toes and stairs and straight leg raising was normal. She had diminished sensation over the right lateral femoral nerve, suggesting to Onofrio that plaintiff's nerve might be compressed (a condition known as meralgia paresthetica). Noting the absence of any nerve root encroachment documented on the MRI scan, Onofrio indicated that surgery was not an option for plaintiff's low back pain, but that an epidural steroid injection might help. For plaintiff's burning right thigh, Onofrio prescribed Neurontin. He indicated that plaintiff should keep working because inactivity would make her more aware of the pain in her thigh. AR 270-72.

On June 16, 2004, plaintiff saw Alexander and asked for a referral for a second opinion at the Mayo Clinic. Plaintiff reported that she was trying to lose weight and would like to go back to work when her pain subsided. AR 267.

On July 14, 2004, plaintiff saw Dr. Robert K. Yang at the Spine Center at the Mayo Clinic, who noted that her toe walking, heel walking and tandem gait were normal.  He also noted that she had symmetric reflexes but decreased strength and pinprick sensations in her lower extremities.  She had marked limitation in her ability to move her spine but no limits on her ability to move her arms or legs.  Yang was of the opinion that the source of plaintiff's pain was her sacroiliac joint.  He recommended that plaintiff have an injection in the joint. AR 191-92.

On July 22, 2004, plaintiff told Alexander that she had experienced some pain relief from Neurontin, Vicodin and Flexeril but was still unable to work as a cashier at a convenience store.  Plaintiff said she was working in a bar, but it bothered her lower back. She said she was going to be laid off from her cashier job because she could not lift 50-pound boxes as needed for stocking.   AR 263.

Dr. Marc Huntoon of the Mayo Pain Clinic administered an injection to plaintiff's L5-S1 joint on August 3, 2004.  On August 12, 2004, plaintiff told Huntoon she had obtained no relief whatsoever from that injection.  Huntoon then administered an injection to plaintiff's right sacroiliac joint.  At a follow-up visit with Yang that afternoon, plaintiff said she was in no pain or discomfort after the injection.  Yang noted that although it would be about a week or so before he could determine whether the injection had been helpful, it would be reasonable for plaintiff to return to work.  AR 189.

On September 22, 2004, plaintiff reported to Alexander that she had no pain relief from the injections. AR 261. Alexander noted that plaintiff's options were to attend a pain clinic or undergo a functional capacities evaluation. Alexander recommended that plaintiff avoid heavy lifting, pushing or pulling.

On October 28, 2004, Alexander referred plaintiff to Dr. Toni Hanson, a physical medicine and rehabilitation specialist at the Mayo Clinic. AR 260. On November 4, 2004, X-rays taken of plaintiff's lumbar spine showed lumbrocsacral degenerative disc disease and degenerative arthritis of the lower lumbar facet joints, particularly at L5-S1. X-rays of the right hip were normal. AR 212. Hanson recommended a pain clinic evaluation for possible injection of plaintiff's right femoral cutaneous nerve and right hip joint and he suggested that plaintiff see a physical therapist for a core exercise and stabilization program.

On November 12, 2004, plaintiff was seen in the Mayo Pain Clinic by Dr. James C. Watson. Plaintiff had a mildly antalgic gait, moderately limited spinal motion, normal straight leg raising and no motor weakness or sensory loss in the lower extremities. AR 204-205. She had significant pain when touched in the right sacroiliac region and on the right thigh joint. Watson diagnosed plaintiff with right sacroiliac joint pain, burning pain in her anterior thigh, and bursitis in the right hip joint. He noted that plaintiff was scheduled for a bone scan later that afternoon and was scheduled to return to the pain clinic the following week. Watson indicated that if the results of the bone scan were unrevealing, then at that

visit he would perform a nerve block and inject plaintiff's right hip joint.  In the meantime, plaintiff was given Lidoderm patches to apply to her right thigh.

Plaintiff returned to the Mayo Clinic on November 18, 2004 for her bone scan and injections.  The bone scan showed mild degenerative changes at S1 but was otherwise normal.  Dr. Patty Atkinson, a neurologist, examined plaintiff to discover whether there was evidence of a right lateral femoral cutaneous nerve syndrome.  Atkinson found some evidence but noted that facet disease should be considered as the cause of plaintiff's back and leg pain.  During the visit, plaintiff noted that she had recently had some chest pain when lying down.  Atkinson referred plaintiff to emergency medicine for evaluation of her chest pain before she was to undergo injections later that afternoon.  AR 184-85.  A stress test administered later that day was negative for ischemia.  Plaintiff was advised to see her physicians to complete her orthopedic workup and to follow up with her primary physician for her chest pain.  AR 177.

On February 4, 2005, plaintiff returned to Alexander.  She said she had never followed up with any of the injections planned at the Mayo Clinic, reporting that there was no plan in place for her treatment.  Alexander advised plaintiff that she would attempt to contact the Mayo clinic physicians and clarify their plan for her.  She recommended that plaintiff get into a work hardening program.  AR 255.

On June 17, 2005, plaintiff was seen by Dr. Sally Quinn, a physiatrist at the Franciscan Skemp Clinic. Plaintiff told Quinn that her pain was a 10 on a scale of 1 to 10, but Quinn noted that she appeared comfortable and could sit without difficulty. Her gait, coordination and station were normal. Plaintiff had mild limitations in lumbar motion, normal strength and reflexes in all extremities, normal straight leg raising and hip motion and no atrophy. Plaintiff told Quinn that she did some light exercise, walked half a mile, puttered around the house and watched television in the evening. She also reported that she enjoyed being around people and wanted to resume cashiering work. AR 249-51.

Quinn concluded that plaintiff was not physically disabled and was capable of working, although there might be psycho-social barriers to plaintiff's return to work. Quinn referred plaintiff for a vocational and behavioral health assessment and recommended a water-based physical therapy program. AR 251-53.

On June 23, 2005 plaintiff saw Alexander, who reviewed the Mayo Clinic treatment notes and Quinn's evaluation. She noted that plaintiff had been offered a behavioral health consultation which she had declined. Plaintiff also had declined another epidural injection. Alexander strongly encouraged plaintiff to have a consultation with vocational rehabilitation and get back into the work force as soon as possible. Plaintiff was going to apply for jobs that did not require heavy lifting, pushing or pulling. AR 244-46.

On June 30, 2005, Dr. William Roberts saw plaintiff in the behavioral health services clinic.  He noted that plaintiff had a history of a mood disorder for which she was last seen in January 2004.  Plaintiff was no longer taking her prescribed medication, Paxil, because of financial difficulties.  Roberts noted that plaintiff had done reasonably well for a period of time in spite of being off her medication but her symptoms had worsened in the last two months.  With plaintiff's agreement, he re-started her on Paxil, noting that plaintiff had done very well on that medication in the past.  AR 238.

Stephen Porter, a psychologist in the vocational rehabilitation clinic, saw plaintiff on June 30 and July 5, 2005 for a vocational assessment and cognitive testing.  AR 239-41.  Porter's testing showed a significant split between plaintiff's verbal and nonverbal capabilities, suggesting some form of learning disability.  Porter concluded that plaintiff did not meet the minimal criteria to return to her position as a cashier because she would not be able to stand continuously or handle products that would weigh more than a few pounds.  He wrote:  "While it is feasible [plaintiff] could work in a sedentary setting, for example, checking, doing reception type work, etc., for two to four hours, at this point it is questionable whether she could earn the Social Security minimums.  Ramona would be appropriately viewed as a disabled worker using the Social Security standard."  AR 240.  Porter suggested that plaintiff consider applying to be approved as an adult foster care provider.

9

Plaintiff went to physical therapy with Jeff Legler regularly between July 1 and 12 but then did not show up for appointments on July 14 and 19 because of her daughter's hospitalization.  She was continuing a home exercise program.  On July 13, 2005, plaintiff saw Alexander and reported that she was ready to go back to work part-time.  AR 242.

On October 13, 2006, plaintiff began seeing Dr. Walter Downey at the Osseo Medical Center for low back pain.  AR 347-48.  He diagnosed her with degenerative joint disease of L5-S1.  AR 347.  He noted that plaintiff had a reduced range of motion in her lumbar spine and walked slowly with a guarded gait and antalgia.  AR 333, 336.  He prescribed Lorcet for plaintiff's pain.  At a visit on February 26, 2007, plaintiff reported that her back pain and numbness in her right leg had not improved.  She denied having any weakness or dizziness.  AR 339.

Plaintiff went to physical therapy in March 2007.  AR 331-37.  On March 26, 2007, plaintiff saw Downey, who noted that Lorcet was controlling plaintiff's pain fairly well but that physical therapy and epidural injections had not worked.  AR 330-31.

## C.  <u>Consulting Physicians</u>

On May 25, 2005, state agency consulting physician Dr. Pat Chan assessed plaintiff's physical residual functional capacity.  He concluded that plaintiff could lift 10 pounds frequently and 20 pounds occasionally; stand or walk six  hours in an eight-hour work day;

and sit six hours in an eight-hour work day with only occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling and never climbing ladders, ropes or scaffolds. AR 216-23. On August 30, 2005, state agency physician Robert Callear affirmed this assessment. AR 327.

On May 27, 2005, state agency consulting psychologist Keith Bauer completed a Psychiatric Review Technique Form for plaintiff. He evaluated the evidence under the listing categories for affective and anxiety disorders. In addressing the "B" criteria for these listings, he found plaintiff had no restrictions of activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. AR 224-37. On September 1, 2005, state agency psychologist Jack Spear affirmed this assessment. AR 328.

### D.  Hearing Testimony

At the beginning of the hearing, the administrative law judge asked Joe Taylor, a non-lawyer who was present at the hearing, whether he wanted to be a witness or plaintiff's representative. Taylor responded that he would be plaintiff's representative. AR 360. The administrative law judge asked Taylor whether there were additional records he wished to provide. Taylor responded, "No, we have no other records." The administrative law judge explained the role of the vocational expert to Taylor. AR 360-61.

Plaintiff testified that she stands five feet four inches and weighs 175 pounds. AR 363. She further testified that she is divorced and that her 24-year-old son lives with her. AR 364. Plaintiff said that she had not worked since April 2004 because of sharp back pain at her waistline that radiates down her right leg. AR 367-68. Plaintiff testified that she takes Lorcet for the pain every few hours and that she also takes Paxil, Amytriptyline and Lorazepam. AR 369-70.

Plaintiff testified that she smoked a half a pack of cigarettes a day but that she wants to quit. AR 271. She does not drive very much because of the pain and the pain medication. AR 369. She explained that she had been told she was not a candidate for surgery. AR 380.

Plaintiff testified that she could walk four blocks, sit for 30 to 45 minutes at a time and stand for an hour. AR 372. She explained that it was easier to stand or walk than to sit. AR 382. She testified that both hands get numb and tingly. AR 373. Plaintiff testified that she could take care of herself but did not do any household chores. In a typical day she sits or lies down and watches television. AR 374-75. Plaintiff added that she had been thinking about doing foster care work but decided she could not physically do it. AR 388.

Taylor asked plaintiff whether the administrative law judge had failed to ask her anything, to which she responded, "I don't think so." AR 393. At the end of the hearing,

Taylor began talking about his own pain.  The administrative law judge reminded him to focus on plaintiff's case.  AR 404.

The administrative law judge called Richard Willette, a neutral vocational expert, to testify.  AR 393.  Before the hearing, Willette had prepared a vocational case study for plaintiff in which he classified her past work according to the Dictionary of Occupational Titles.  AR 139-46.  Willette testified, consistent with his report, that plaintiff had performed the following jobs in the past:  skilled, sedentary bookkeeper; semi-skilled, medium home health care person; semi-skilled, light casino security guard; unskilled, medium packager; and semi-skilled, medium truck driver.  AR 397.

The administrative law judge asked Willette whether any of plaintiff's past jobs could be performed by an individual of plaintiff's age, education and work history who was limited to light work (lifting 10 pounds frequently and 20 pounds occasionally), standing for no more than 30 minutes at one time, sitting for no more than 30 minutes at a time, no pushing or pulling below the waist and occasional postural limitations such as bending, crawling and climbing.  AR 398-99. Willette responded that such an individual could perform plaintiff's past jobs as a bookkeeper and a casino security guard.  AR 398.  In response to a modified hypothetical question limiting the individual to sedentary work (lifting 10 pounds occasionally and five pounds frequently and standing only two hours a day), Willette testified that such an individual could perform plaintiff's past job as a bookkeeper.  AR 399.

13

Willette testified that his responses were consistent with the <u>Dictionary of Occupational Titles</u>.  AR 400.

At the close of the hearing, the administrative law judge asked plaintiff whether she had any further testimony.  She testified that she had to lie down because of her pain.  AR 404.  Plaintiff also submitted a list of medications that she had tried to relieve her pain.  AR 406.  She also testified that the medication she was taking currently made her dizzy and act like she was drunk.  AR 409.  The administrative law judge asked her about the medications and pain relief options she had tried.  Plaintiff responded that she had refused to have any more epidural injections because they were painful.  AR 407-408.

### E.  <u>The Administrative Law Judge's Decision</u>

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  <u>See</u> 20 C.F.R. § 404.1520.  At step one, he found that plaintiff had not engaged in substantial gainful activity since April 14, 2004.  At step two, he found that plaintiff had a severe impairment of chronic low back pain secondary to degenerative disc disease of the lumbrosacral spine at the L5-S1 level, documented by magnetic resonance imaging with radiation of pain into the lower right extremity.

The administrative law judge found that plaintiff's history of depression with anxiety was not a severe impairment because it did not cause more than minimal limitation in the plaintiff's ability to perform basic mental work activities. Considering the four "B" criteria relevant to assessing the severity of a mental impairment, see 20 C.F.R. § 404.1520a(c), he found that plaintiff had only mild limitations. With respect to activities of daily living, he found that plaintiff's chronic pain and depression did not prevent her from light driving, performing stretching exercises, managing all of her personal needs on her own, preparing meals and maintaining concentration while watching television. The administrative law judge also noted that in June 2005 plaintiff told Dr. Quinn that she did light exercise, walked half a mile, puttered around the house and watched television in the evening. AR 13.

With respect to social functioning, the administrative law judge found that although plaintiff was irritable and short-tempered because of chronic pain, she was nonetheless able to maintain friendships and enjoys being around other people. He also found that plaintiff had mild limitation in the areas of concentration persistence or pace. He found, however, that although plaintiff testified that she had difficulty concentrating because of her medication, she was able to maintain concentration while watching television and was able to apply for work after her alleged onset date of disability. The administrative law judge concluded that plaintiff had experienced no episodes of decompensation. AR 13.

The administrative law judge found at step three that plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1. AR 14. He specifically found that plaintiff had remained neurologically intact throughout, had no evidence of nerve root compression or significant limitation of motion of the spine, in May 2004, could walk on her heels and toes and her straight leg raising was normal and did not have abnormal reflexes or any motor or sensory losses. AR 14.

At step four, the administrative law judge determined that plaintiff had the residual functional capacity to perform sedentary work with a sit or stand option every 30 minutes, with occasional bending, stooping, crawling and climbing and no pushing or pulling below waist level. He found that these limitations were generally consistent with plaintiff's own testimony that she could sit for 30-45 minutes at a time and be on her feet for up to one hour at a time. However, he found that plaintiff's allegations of sharp low back pain radiating into her right leg, occasional numbness and tingling in her hands, symptoms of depression, her inability to sit or stand for any length of time and her need to lie down during the day to relieve her discomfort were not consistent with the objective medical findings. The administrative law judge found that plaintiff's daily activities were only mildly restricted secondary to her low back and right leg pain and depression. AR 15. He stated:

16

> The claimant testified that despite her chronic pain and depression, she is still able to do light driving, perform all personal cares, perform back stretching exercises, prepare meals, perform household chores and maintain concentration when watching television, which she does for most of the day.  In addition, the claimant reported to Dr. Quinn in June, 2005, that she walks ½ mile a day for exercise, enjoys being around other people and had a goal of getting back to cashiering work.

AR15-16.  He found that these activities were not characteristic of an individual experiencing either pain or depression at a disabling level of severity. He also found that they were consistent with the ability to perform a modified range of sedentary work.  AR 16.

The administrative law judge found that plaintiff's medication impaired her concentration only slightly.  He mentioned that she was doing well on Paxil for depression and was not undergoing any active mental health treatment.  He also noted that plaintiff was not a good candidate for back surgery and continued to smoke against medical advice.  The administrative law judge added that plaintiff had applied for work after her alleged onset date of disability and that in August 2005, a treating physician had opined that plaintiff could perform a sedentary job.  AR 16.

The administrative law judge afforded little weight to Porter's opinion that plaintiff was disabled.  He found that Porter's opinion was not supported by objective medical evidence and was contrary to the weight of the evidence in the record, including Porter's own

statements that plaintiff had done very well in the past on Paxil and might be capable of self-employment in the area of adult foster care.  AR 16.

Relying on the testimony of the vocational expert, the administrative law judge found that plaintiff was capable of performing her past work as a bookkeeper, which was performed at the skilled, sedentary level.  He then found that plaintiff was not disabled from April 14, 2004 through the date of his decision.

OPINION

A.  <u>Standard of Review</u>

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be.  <u>Clifford v. Apfel</u>, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on

18

the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

## B.  Development of Record

Although a claimant has a statutory right to counsel at a disability hearing, she may waive this right.  Thompson v. Sullivan, 933 F.2d 581, 584 (7th Cir. 1991).  To ensure a valid waiver of counsel, an administrative law judge must explain the manner in which an attorney can aid in the proceedings, the possibility of free counsel or a contingency arrangement and the limitation on attorney fees to 25 percent of past-due benefits plus required court approval of the fees.  Id.  Further, although the Act permits a claimant to choose an attorney or a non-attorney representative, 42 U.S.C. § 406, the non-attorney representative must be "capable of giving valuable help . . . in connection with [the] claim."  20 C.F.R. §§ 404.1705(b)(2) and 416.1505(b)(2).

The commissioner does not deny that in this case the administrative law judge failed to obtain a valid waiver of counsel or qualify plaintiff's representative.  He argues, however, that plaintiff suffered no prejudice from this omission because the administrative law judge fully and fairly developed the record.  Binion v. Shalala, 13 F.3d 243, 245 (7th Cir. 1994) (when administrative law judge fails to obtain valid waiver, burden is on commissioner to show that administrative law judge fully and fairly developed record).  I agree.  The administrative law judge had before him plaintiff's medical records from April 2004 through October 2006, including magnetic resonance imaging scan and x-ray results.  He gave plaintiff and her representative an opportunity to review the records; they acknowledged that they were complete.  The administrative law judge also had before him two mental residual functional capacity assessments by state agency psychologists and two physical residual functional capacity assessments by state agency physicians.  During the one-hour hearing, he allowed plaintiff to testify at length about her impairments and asked her questions about the medical evidence, her medication, her pain and her daily activities.  At the end of the hearing, plaintiff's representative asked her whether the administrative law judge had failed to ask her anything, to which she responded, "I don't think so."  After the vocational expert testified, however, plaintiff stated that she had more to add about the various medications and other things she had tried to relieve her pain.  The administrative law judge allowed

plaintiff to testify on this subject and asked her relevant follow-up questions about her testimony.

Plaintiff argues unpersuasively that the administrative law judge did not fully develop the record because he failed to elicit testimony from her regarding the effects of her depression and anxiety on her ability to work, the side effects of her psychiatric medications and her need to rest and lie down during the day. The records before the administrative law judge showed that plaintiff had not received significant treatment for anxiety or depression and had done very well on Paxil, which plaintiff acknowledged she was taking. Accordingly, it was not critical for the administrative law judge to explore this topic in detail at the hearing. Further, plaintiff never mentioned any significant symptoms of depression or anxiety or any side effects from her psychiatric medications even though she was asked whether she had anything to add to her testimony. It is difficult to comprehend plaintiff's last argument, that the administrative law judge should have elicited testimony from her about her need to lie down during the day in light of the fact that the administrative law judge heard testimony from plaintiff in this regard and even followed up with a question regarding whether plaintiff lay down every day.

In sum, the administrative law judge developed the record adequately and conducted a fair and thorough hearing. He gave plaintiff two open-ended opportunities to add to the testimony elicited and listened to her testimony concerning why she was unable to work. All of the evidence before the administrative law judge was more than sufficient to allow him

21

to make a disability determination supported by substantial evidence.  Luna v. Shalala, 22 F.3d 687, 692 (7th Cir. 1994) (court "generally respects the ALJ's reasoned judgment" regarding how much evidence needed to make finding about disability).

Because the commissioner has shown that the record was developed fairly and fully, plaintiff may attempt to rebut this showing by establishing that she was prejudiced in some way by the lack of representation, such as by the omission of critical evidence.  Binion, 13 F.3d at 245.  "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand."  Id. at 246.  But even now when plaintiff is represented by counsel she fails to explain what additional salient information could have been provided or that the administrative law judge could have discovered.  In sum, remand is not warranted.  The commissioner has met his burden of showing that the administrative law judge fully and fairly developed the record.  Plaintiff has failed to rebut this showing with any evidence, much less evidence that shows a prejudicial gap in the record requiring further development.

## C.  Listed Impairment

Plaintiff argues that administrative law judge erred by failing to consider whether plaintiff met or equaled the listing for disorders of the spine, Listing 1.04 A.  The listing requires:

22

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg testing (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04 A.

Without referring to any specific listing, the administrative law judge found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any listed impairment. In making this finding, the administrative law judge found that plaintiff has degenerative disc disease at the L5-S-1 level of the lumbosacral spine documented by magnetic resonance imaging evidence of a central disc protrusion of L5-S1 and a mild broad based posterior disc bulge at L4-5 level. However, he explained that plaintiff had remained neurologically intact throughout and that in May 2004 plaintiff could walk on her heels and toes and had normal straight leg raising. He noted she did not have abnormal reflexes or any motor or sensory losses and that the record contained no evidence of nerve root compression or significant limitation of motion of the spine.

Plaintiff argues that it is impossible to determine whether the administrative law judge considered listing 1.04 in his decision. An administrative law judge should mention the specific listing he is considering. His failure to do, if combined with a "perfunctory analysis" may require a remand. Ribaudo v. Barnhart, 458 F.3d 580, 583 (7th Cir. 2006). In this

23

case, although the administrative law judge did not mention a specific listing, his analysis was not perfunctory and it is plain that he was considering Listing 1.04 A.  His findings parrot the evidence that is required by the listing, including motor, sensory and reflex loss, straight leg raising and limitation of motion.  I find that the administrative law judge properly considered the requirements of listing 1.04 A when he found that plaintiff did not meet a listed impairment.


D. Credibility

Plaintiff challenges the administrative law judge's determination that her statements concerning the intensity, persistence and limiting effects of her symptoms were  not entirely credible.  Under Social Security Ruling 96-7p, an administrative law judge must follow a two-step process in evaluating an individual's own description of his or her impairments:  1) determine whether an "underlying medically determinable physical or mental impairment" could reasonably be expected to produce the individual's pain or other symptoms; and 2) if such a determination is made, evaluate the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  Social Security Ruling 96-7p, 1996 WL 374186, *1 (1996); see also Scheck v. Barnhart, 357 F.3d 697, 702 (7th Cir. 2004).  When conducting this evaluation, the administrative law judge may not reject the claimant's statements

24

regarding her symptoms on the sole ground that the statements are not substantiated by objective medical evidence.  Instead, the administrative law judge must consider the entire record to determine whether the individual's statements are credible.  Relevant factors the administrative law judge must evaluate are the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions.  SSR 96-7p; 20 C.F.R. §§ 404.1529(c), 416.929(c).  See also Scheck, 357 F.3d at 703; Zurawski, 245 F.3d at 887.

In assessing plaintiff's credibility, the administrative law judge considered the objective medical evidence, including the magnetic resonance imaging scan, x-rays and physical examinations.  He considered plaintiff's daily activities, making a specific finding that they were not characteristic of an individual with disabling pain or depression but were consistent with the ability to perform a modified range of sedentary work activity.  He also noted that she had found relief from her pain with her current medication, which caused only a mild impairment of concentration.  He mentioned that plaintiff had applied for work

25

after her alleged onset date of disability and that she had failed to follow her doctors' advice to stop smoking.

Plaintiff argues that the administrative law judge placed too much weight on her daily activities and her failure to stop smoking and not enough weight on the various medications she had tried for pain relief and that he drew an illogical inference about her ability to concentrate from her ability to watch television.  Having considered all of plaintiff's arguments, I am satisfied that the administrative law judge's credibility determination was not patently wrong.  Absent obvious evidence of malingering or lying, determining whether to accept wholesale a claimant's allegation that she is in so much pain that she cannot work is not an exact science.  Carradine v. Barnhart, 360 F.3d 751, 753 (7th Cir. 2004).  An administrative law judge's credibility determination is given special deference because the administrative law judge is in the best position to see and hear the witness and to determine credibility.   Shramek v. Apfel, 226 F.3d 809, 812 (7th Cir. 2000).  In general, an administrative law judge's credibility determination will be upheld unless it is "patently wrong."  Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006); Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying.").  However, the administrative law judge still must build an accurate and logical bridge between the evidence and the result.  Shramek, 226 F.3d at 811.  The court will affirm a credibility

26

determination as long as the administrative law judge gives specific reasons that are supported by the record.  Skarbeck v. Barnhart, 390 F. 3d 500, 505 (7th Cir. 2004).

Here, even though plaintiff's daily activities are not all that extensive and her treatment history is consistent with her allegations of severe pain, the administrative law judge did not commit any serious logical flaws in his assessment of the evidence.  Objective medical testing failed to reveal any significant abnormalities in plaintiff's spine that could be causing the pain, her nerves were not compromised and she had normal strength and mobility in her extremities.  Although plaintiff's daily activities were somewhat limited, they suggested that she retained the ability to perform activities not demanding a great deal of exertion and that she was not debilitated by depression.  Doctors noted that plaintiff's mental condition had responded well in the past to Paxil and Porter thought plaintiff had the physical and mental ability to perform clerical-type work (albeit on a part time basis). The most recent records from Downey indicated that plaintiff's latest medication, Lorcet, had provided her with at least some measure of pain relief and, in contrast to her testimony at the hearing, plaintiff had not reported dizziness or any other side effects from that medication.  Finally, plaintiff had applied for work after her alleged onset date.  The administrative law judge discussed all this evidence.  It provides adequate support for his credibility determination.

27

In sum, plaintiff has not demonstrated that this is one of those rare occasions on which the court should disturb the administrative law judge's credibility finding. The administrative law judge was not patently wrong. He built an accurate and logical bridge between the evidence and his conclusion that plaintiff's statements considering her limitations were not fully credible.

E. Porter's Opinion

Plaintiff contends that the administrative law judge erred in giving little weight to Porter's opinion that "it would be appropriate to view" plaintiff as a disabled worker. She argues that the administrative law judge failed to analyze Porter's opinion in accordance with 20 C.F.R. § 404.1527, which describes how the administrative law judge is supposed to weigh medical opinions. A "medical opinion" is defined as a statement from a physician or psychologist or other acceptable medical source that "reflect[s] judgments about the nature and severity of [a plaintiff's] impairment(s)" including symptoms, diagnosis and prognosis, what the plaintiff can still do despite the impairments and physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). Whether Porter's opinion qualifies as a "medical opinion" is debatable. Although he is a psychologist, his opinion was offered for the purpose of determining "whether [plaintiff] would be considered a disabled worker using a Social Security standard" or whether she was a candidate for vocational rehabilitation, AR 241; in

28

other words, he was to say whether plaintiff was "disabled" from a vocational standpoint. However, the determination whether a claimant is disabled is reserved for the commissioner. 20 C.F.R. § 404.1527(e)(1). Accordingly, the administrative law judge was not required to give any special weight to Porter's opinion that plaintiff ought to be deemed disabled.

Porter did make some statements about plaintiff's limitations. He indicated that because of her low back pain, plaintiff was precluded from most activities that would involve lifting, bending, crawling, climbing, pushing or pulling below waist level or sitting or standing in any one position for more than 30 minutes. He recognized that it was "feasible" that plaintiff could perform sedentary checking or reception work, but indicated that she could do so for only two to four hours a day.

It is questionable whether Porter, a psychologist who had no treatment relationship with plaintiff and saw her for the purpose of providing a vocational evaluation, was qualified to offer *any* opinion about plaintiff's physical abilities. Social Security Ruling 96-6p, 1996 WL 374180, *2 (1996) (opinions from physicians "who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources."). Even so, the administrative law judge appears to have adopted most of the limitations identified by Porter, notwithstanding his statement that he was giving the opinion little weight because it was not supported by objective medical findings and was

29

contrary to the other evidence of record.  The only limitation Porter identified that the administrative law judge did not include in his residual functional capacity assessment was the restriction to part-time work.  However, the administrative law judge was entitled to reject this opinion because Porter provided no objective medical findings to support his conclusion that plaintiff was capable of working only two to four hours a day.  In addition, Porter's opinion was contrary to the other evidence of record, including plaintiff's daily activities, the limited objective findings, plaintiff's attempts to look for work, statements by other examining physicians that indicated that plaintiff was physically capable of working and Porter's own suggestion that plaintiff might be capable of employment as an adult foster care provider.  Overall, I find no error by the administrative law judge in declining to give much weight to Porter's opinion.

Plaintiff contends that the administrative law judge should have re-contacted Porter to clarify his opinion.  When the evidence in the record from a treating physician is inadequate to make a determination about whether a claimant is disabled or contains a conflict or ambiguity, an administrative law judge will seek additional information by re-contacting that medical source.  20 C.F.R. §§ 404.1512(e), 416.912(e).  In this case, the administrative law judge reasonably concluded that Porter's report did not need any clarification.  Further, Porter was not a treating physician.  Therefore, it was not necessary for the administrative law judge to re-contact him.

### F.  Residual Functional Capacity

Plaintiff contends that the administrative law judge failed to adhere to Social Security Ruling 96-8p in determining her residual functional capacity.  A claimant's "residual functional capacity" is the "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." Social Security Ruling 96-8p; see also 20 C.F.R. § 404.1545.  A "regular and continuing basis" means "8 hours a day, for 5 days a week, or an equivalent work schedule."  Id.  At the disability hearing stage, the responsibility for determining the claimant's residual functional capacity lies with the administrative law judge, who must consider all relevant medical and other evidence in the record, including statements from medical sources, the claimant and others. 20 C.F.R. §§ 404.1545, 404.1546.

Plaintiff argues that, in determining plaintiff's residual functional capacity, the administrative law judge failed to consider her testimony that she lies down during the day to relieve her pain and takes medications that make her dizzy and act intoxicated.  However, the administrative law judge specifically found that this testimony was not credible.  Further, no medical evidence supported any limitations caused by the side effects of her medications.  Therefore, the administrative law judge did not need to consider these limitations in determining her residual functional capacity.

31

Plaintiff also argues that the administrative law judge failed to analyze how her mental impairments affected her ability to sustain full-time work.  First, plaintiff contends that her mental impairments of anxiety and depression were severe impairments.  However, the medical records do not support this conclusion.  Plaintiff had no mental health treatment, did not report significant mental health problems to her treating physicians and had done well on Paxil.  The administrative law judge considered the four broad areas of functioning relevant to determining the severity of mental impairments and found that plaintiff had at most mild limitations in these areas.  Plaintiff has not pointed to any evidence to undermine the administrative law judge's findings in this regard.

Plaintiff notes that even if plaintiff's mental impairments were not "severe," the administrative law judge was required to account for any work-related limitations posed by those impairments when assessing plaintiff's residual functional capacity.  20 C.F.R. § 404.1545(a)(2), (b), (c).  Again, however, plaintiff does not identify any evidence in the record indicating that her depression and anxiety have *any* impact on her ability to work. The fact that plaintiff "has a history" of anxiety and depression for which she takes medication does not establish, *ipso facto*, that her mental impairments have more than a minimal effect on her ability to work.  To the contrary, plaintiff told a disability specialist in November 2004 that it was her back pain, not her anxiety, that kept her from working, and she did not allege mental problems as a basis for disability.  AR 92, 104.  Porter, the

vocational specialist, made no mention of plaintiff's mental impairments and did not suggest that plaintiff had any mental limitations that prevented her from performing her past skilled work as a cashier. In sum, substantial evidence supports the administrative law judge's conclusion that plaintiff did not have any mental impairments that would prevent her from performing her past relevant work. The administrative law judge properly determined plaintiff's residual functional capacity according to Social Security Ruling 96-8p.


ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security is AFFIRMED and plaintiff Ramona Jolivette's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 30th day of September, 2008.

BY THE COURT:


/s/

_____
BARBARA B. CRABB
District Judge


33